☒ FILED  ☐ RECEIVED

**May 20, 2024**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

GARY M. RESTAINO
United States Attorney
District of Arizona
FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 003404
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Frank.Galati@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-8027-PHX-SPL |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| Joshua Ben Anderson | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, JOSHUA BEN ANDERSON, hereby agree to resolve this matter on the following terms and conditions:

1.  **PLEA**

The defendant will plead guilty to **Count 2 of the indictment** charging the defendant with a violation of Title 18 United States Code (U.S.C.) § 1512(c)(1), **Corruptly Altering and Concealing of Evidence**, a Class C felony offense.

2.  **MAXIMUM PENALTIES**

    a.  A violation of 18 U.S.C. § 1512(c)(1) is punishable by a maximum fine of **$250,000**, a maximum term of imprisonment of **twenty (20) years**, or both, and a term of supervised release of **three (3) years**. A maximum term of probation is **five (5) years** (including a minimum term of one (1) year if probation is imposed).

    b.  According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a **$100** special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

a. Recommendation. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States **recommends** that defendant be given **credit for the approximately three and one-half months of jail time** that he spent in tribal custody following his arrest on tribal charges on or about November 24, 2023.

b. Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that **defendant's sentence shall not exceed the midpoint of the sentencing range as calculated under U.S.S.G. § 1B1.1(a)**. This stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing

in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the cap, or the court from imposing a sentence below the cap, including a sentence of probation.

       d.    Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than **$10,000** to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

       e.    Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

If the defendant is a member of a Native American tribe that provides "per capita" payments to its members, the defendant agrees that any such "per capita" payment shall be

paid over to the Clerk of the Court and applied to the defendant's restitution obligation until restitution to all victims is paid in full.

f. Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

4. **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: **Count 1 of the indictment.**

b. This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with **United States Attorney-District of Arizona file number 2023R09975 and FBI file number 198A-PX-3845057.**

c. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

5. **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically

be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

    (1)    criminal convictions, history of drug abuse, and mental illness; and

    (2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9.    ELEMENTS**

**Corruptly Altering and Concealing of Evidence**

On or about November 23 and 24, 2023, in the District of Arizona:

1.    Defendant corruptly

2.    alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.

"Corruptly" means acting with an improper purpose or consciousness of wrongdoing.

10. **FACTUAL BASIS**

   a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

   b. **Background.** In the early morning hours of November 23, 2023, JOSHUA BEN ANDERSON was a sworn officer of the White Mountain Apache Tribe Police Department ("WMATPD") in Whiteriver, Arizona. He was on duty and working in his patrol unit, a Ford F-150 truck. While driving southbound on SR-73, Officer ANDERSON felt what he later described as "a bump." He knew he hit something but did not see what it was and continued southbound on SR-73 without stopping.

   Only minutes later, WMATPD received its first call that a body was observed on SR-73. Officer ANDERSON was dispatched to conduct a welfare check of the person who had been observed on SR-73. He recognized that he was dispatched to the general area where only minutes before he had felt a bump while driving.

   Officer ANDERSON arrived at the scene and directed WMATPD's early investigation. The person was a woman who was dead and had obviously been hit by a vehicle. Early investigation centered upon finding the vehicle who had hit the woman. Upon the arrival of WMATPD's highway safety officer ("HSO"), he and Officer ANDERSON located a black piece of plastic that had blood and human flesh on it. The HSO told Officer ANDERSON that the vehicle that had fled the scene was a pickup truck and that the black plastic piece came from the suspect vehicle. The HSO located a part number on the piece of black plastic and determined that it came from a 2015 or newer Ford F-150 pickup truck. The part came from the front lower bumper damper. The HSO later noticed that Officer ANDERSON'S Ford F-150 patrol vehicle had damage to the front. The lower circular bar running across the lower part of the push bar was broken in two, and a piece behind the push bar was missing.

Officer ANDERSON later stated that when he saw the HSO looking at ANDERSON'S patrol vehicle, he knew that the bumper part that was found at the scene was probably from his vehicle, but he said nothing. When Officer ANDERSON'S shift ended, he drove to his residence, and he took the black plastic bumper piece that was found at the scene with him. After arriving at his residence, Officer ANDERSON inspected the bumper of his patrol vehicle and removed and concealed the broken parts from the front bumper area of his patrol vehicle. And he said nothing to the WMATPD officers who were investigating.

On November 24, 2023, WMATPD officers went to Officer ANDERSON'S residence. The black plastic bumper piece that was found at the scene and was collected as evidence was found by WMATPD officers in the bed of Officer ANDERSON'S patrol vehicle at his residence.

Investigation of potential felony offenses that involve death or serious injury that occur on tribal lands of the White Mountain Apache Tribe is within the jurisdiction of federal law enforcement. WMATPD routinely refers such investigations to the Federal Bureau of Investigation or Bureau of Indian Affairs. On November 25, 2023, Officer ANDERSON told the FBI that the portion of the front bumper that he had removed from his patrol vehicle was in his green 1973 Ford 100 truck that was parked at his residence. Officer ANDERSON gave verbal and written consent to the FBI to enter the 1973 Ford truck and retrieve the bumper piece, which was done.

c.  **Offense conduct**. On or about November 23 and 24, 2023, in the District of Arizona, JOSHUA ANDERSON, a police officer of the White Mountain Apache Tribe Police Department, corruptly altered and concealed an object with the intent to impair the object's integrity and availability for use in an official proceeding.

More specifically, Officer ANDERSON, knowing that the black plastic bumper piece that was found at the scene with human flesh and blood on it was from a 2015 or newer Ford F-150 pickup truck, and knowing that it likely came from his patrol vehicle and matched the bumper parts that remained on this patrol vehicle, removed the damaged

bumper parts from his patrol vehicle and concealed the removed bumper parts, with the intent to impair the bumper parts' integrity and availability for use in a federal grand jury presentation.

    d.    The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to

modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment, or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

May 14th 2024
Date

Joshua Ben Anderson
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No

assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5/14/27
Date

Brad Miller, Esq.
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

Date

FRANK T. GALATI
Assistant U.S. Attorney

Digitally signed by FRANK GALATI
Date: 2024.05.14 16:41:46 -07'00'

**ACCEPTANCE BY THE COURT**

5/20/24
Date

Honorable STEVEN P. LOGAN
United States District Judge

- 11 -